was to divide the assets equally and therefore equitably. Adopting these principles as applicable in all respects to the act of 1867, and recognizing the decisions of Judge Blatchford, in Re Black [supra]; of Judge Hall, in Beattie v. Gardner [Case No. 1,195], and of Judge Woodruff, in Smith v. Buchanan [Id. 13,016], as the best expositions of the scope and spirit of its provisions, and considering all the facts of the case before me, I have no doubt that I ought to hold, and I do hold, that all of these judgments must be set aside as fraudulent preferences, and that the proceeds of the sale of the bankrupt's personal estate must go to and be held by the assignee for the payment of the general creditors.

## Case No. 8,504.

### The LORD.

### [Chase. 527.] [1]

Circuit Court, D. North Carolina. June Term, 1869.

CARRIERS — ATTACHMENT BY SHERIFF — STIPULATION TO HOLD FOR SHERIFF—DEMAND AND SUIT BY CONSIGNEE.

1. The master of a vessel may lawfully refuse to deliver goods to the consignee which, having been attached on his vessel, are carried to the port of consignment under an agreement with the sheriff that they should be returned.

2. Goods are being shipped from N. to W., some of which are on the wharf, some on the steamer. At this time the sheriff levies an attachment on them, but those on the steamer being covered up by other goods, and difficult to remove, he allows the captain to proceed with them under an agreement that he will bring them back. When the steamer arrives at W., the consignee tenders the freight, and demands the goods. The captain might lawfully refuse to deliver them up.

[Appeal from the district court of the United States for the district of North Carolina.]

Moore shipped certain cases of mechandise at New York by the steamer Lord, consigned to himself at Wilmington, North Carolina, and received bills of lading for them. After part of the goods were stored in the hold of the vessel, and the remainder were on the dock about to be so stored, the sheriff of New York appeared with an attachment against the goods of Moore, and took possession of the cases on the dock, and was about to have the vessel discharged so as to get possession of those in the hold. To save time, trouble, and expense, the New York agent of the ship gave the sheriff a receipt for the goods on board, agreeing to bring them back from Wilmington, whither she was then bound, and deliver them to him on his return. On her arrival at Wilmington, Moore's agent went on board the ship, offered the freight money due by the bills of lading, and demanded the goods. The master declined to deliver them to the

1 [Reported by Bradley T. Johnson, Esq., and here reprinted by permission.]

said agent, but took them back to New York and delivered them to the sheriff, the latter paying charges and giving his receipt therefor. Soon after that Moore produced to the sheriff an order from the plaintiff in the attachment countermanding it, and that officer then delivered the goods to Moore, he paying sheriff's fees, costs, and charges. Moore then filed his libel in the district court of the United States for the district of Cape Fear in the district of North Carolina, against the steamer in the port of Wilmington, claiming to recover the full value of all the goods shipped and taken by the sheriff's attachment, which value was eight hundred and twenty-five dollars and eighty-eight cents. The district court decreed that Moore was not entitled to recover for the value of the goods seized by the sheriff on the dock, but that he should be paid such sum as it cost him to get back from the sheriff the goods which had been brought to Wilmington by the ship, and which the master there refused to deliver to Moore's agent, but carried back to New York, and delivered to the sheriff. This amount was fixed by agreement of counsel at five hundred dollars, and the court pronounced a decree for that amount against Ward, the master and claimant of the steamer, from which decree is this appeal.

Person & French, for libellant.

A. M. Waddell, for reclaimant.

CHASE, Circuit Justice. This is a case of affreightment. The libellant purchased certain goods in New York, which were shipped by his agent on the steamer Charles W. Lord for Wilmington. Bills of lading were given, in the usual form, by the master of the steamer.

Before the lading of the goods had been completed, a writ of attachment was issued from one of the courts of New York, in favor of a creditor of the libellant. Under this attachment, the sheriff seized the goods not actually on board, and levied the writ upon the remainder of the goods already in the hold of the vessel. As it would occasion great inconvenience to discharge the cargo for the purpose of taking actual possession of the goods in the hold, the sheriff consented to receive a stipulation from the master of the vessel, and from the agent of the libellant, for the safe return of the goods from Wilmington to New York, and their delivery upon arrival at the latter port to him.

Under the circumstances, the steamer proceeded to Wilmington, where the freight money was tendered by the libellant, and delivery of the goods demanded. The master of the steamer refused compliance with this demand, and carried the goods to New York, and delivered them to the sheriff in fulfilment of his stipulation. Subsequently, the libellant effected a compromise with the

attaching creditor, and the goods were delivered into his possession in New York. Under these circumstances, damages are claimed by the libel for non-delivery of the goods at Wilmington according to the bills of lading.

The only question presented for consideration by the court is whether the master of the steamer was excused from compliance with his contract with the libellant by action of the sheriff, under the writ of attachment, and the stipulation made with him. Undoubtedly it was the right and duty of the sheriff under the writ of attachment to seize the goods described in the writ. He had the right to remove all the goods on board, so far as such removal was necessary to reach and take possession of those goods. The authorities cited to us sufficiently establish the law of New York to be, that the sheriff, instead of pursuing this course, had a right to take from the master a stipulation for the safe return of the goods. The custody of the master, during the time he had possession under this stipulation, was the custody of the sheriff. He had no more right to deliver the goods to the libellant at Wilmington than the sheriff would have had to convey the goods to that port and make the delivery. The right of the creditor in attachment displaced, for the time being, the right of the purchaser and assignee of the goods.

It follows that the master was under no obligation to deliver the goods when demanded by the libellant. The decree of the district court must be reversed, and the libel dismissed; and it is ordered.

---

## Case No. 8,505.

### LORD et al. v. DOYLE et al.

[1 Cliff. 453.] [1]

Circuit Court, D. Rhode Island. June Term, 1860.

VENDOR AND PURCHASER—UNRECORDED MORTGAGE—KNOWLEDGE OF EXISTENCE.

1. Actual knowledge of the existence of a prior unrecorded mortgage has the same effect as if the mortgage had been duly recorded.

2. Where a person purchasing real estate gave back to his grantor a mortgage, to secure a part of the consideration money, and subsequently sold a portion of the property to certain third parties, with the agreement that they should assume a certain proportion of the liabilities to which it was subject up to the time of such sale, and among such liabilities was the mortgage to his original grantor: Held, that the subsequent purchasers had sufficient knowledge of the prior unrecorded mortgage.

This was a bill in equity, wherein the complainants [Lord, Warren, Evans & Co.] prayed that certain unrecorded mortgage deeds held by them might be decreed, as valid and subsisting

---

1 [Reported by William Henry Clifford, Esq., and here reprinted by permission.]

liens upon certain real estate therein described, in the same manner and to the same effect as if the deeds had been duly recorded at the time of their execution and delivery. The respondents named in the bill of complaint were Louis J. Doyle, William W. Bishop, Walter W. Updike, Nathaniel Bishop, Charles Jackson, and two corporations, to wit, the Rhode Island Bleach and Cambric Works, and the Coddington Manufacturing Company. Complainants' case was in substance thus stated in the bill of complaint: Louis J. Doyle, on April 15, 1856, purchased certain real estate in Newport, and on the same day with the purchase gave back to his grantor, the Coddington Manufacturing Company, a mortgage to secure a part of the consideration, viz. the sum of $30,903, which mortgage was duly executed and recorded. Doyle then commenced and prosecuted, on the said purchased estate, the business of manufacturing cotton goods, under the name and style of the Rhode Island Manufacturing Company. During the progress of his business he became indebted to the complainants for certain advances, evidenced by certain promissory notes, bills of exchange, drafts, and a balance of account stated, and executed to them two mortgages upon the above-mentioned estate, one dated August 21, 1856, and another upon the day following, to secure these claims. About the 6th of September, 1856, Doyle proposed to Walter Updike and William W. Bishop, two of the other respondents, to form a copartnership for the purpose of carrying on the same business as that in which he was engaged, and they acceded to the proposal, agreeing that they were each to assume one-third of the debts and liabilities he had incurred in the business on and after a given day in that year, which agreement embraced the sums complainants had advanced to Doyle. The articles of copartnership were drawn up between the parties on September the 27th of that year; and Doyle executed to Updike and Bishop deeds of one third each of the before-mentioned estate, and then the company continued to carry on the same business at the same place and under the same partnership name. Both deeds were executed September 27, 1856, and were delivered by the grantees to Doyle to be recorded. The deed to Bishop was properly acknowledged, and was recorded two days after the date, but the one to Updike was not acknowledged till the 2d of October following, and was not then recorded. It was alleged by complainants that, although their mortgages were not recorded, Bishop and Updike, grantees in the deeds above referred to, had actual knowledge of their existence, and that they recognized and acknowledged the same as subsisting liens on the estate. Three other deeds were made by Doyle; on the 21st of October, 1856, he mortgaged the remaining third of the said estate to William W. Bishop to secure $16,207.21; on October 27th, same